Mary Jo SMITH, Appellee/Cross–Appellant,

v.

WASHINGTON SHERATON
CORPORATION, Appellant/Cross–Appellees.

Nos. 96–7228, 96–7238.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 1997.

Decided Feb. 10, 1998.

Edward J. Lopata, Baltimore, MD, argued the cause and filed the briefs for appellant/cross-appellees.

Stephen V. Wehner, Washington, DC, argued the cause and filed the briefs for appellee/cross-appellant.

Before: WALD, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Dissenting opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

RANDOLPH, Circuit Judge:

On June 2, 1993, the plaintiff, Mary Jo Smith, sustained head injuries when she fell off a ramp leading from a parking garage into a lobby of the Washington Sheraton Hotel. Invoking the district court's diversity jurisdiction, 28 U.S.C. § 1332, Smith named as defendants responsible for the condition of the ramp ITT Sheraton Corporation; Washington Sheraton Corporation; Sheraton Operating Corporation; Woodley Road Associates, Inc.; John Hancock Mutual Life Insurance Company; and Sumitomo Life Realty.[1] At the close of all the evidence, the attorney jointly representing these six defendants moved for judgment as a matter of law. See FED. R. CIV. P. 50(a). The district court granted the motion except with respect to Washington Sheraton Corporation, which became the sole remaining defendant. The jury found Washington Sheraton Corporation guilty of negligence and awarded Smith $175,000.

Thereafter, Washington Sheraton Corporation renewed its motion for judgment as a matter of law or a new trial or remittitur, arguing that Smith had failed to present any evidence showing who owned or controlled the ramp. See FED. R. CIV. P. 50(b) and 59. The district court denied the motion.

---

1. The district court granted judgment as a matter of law in favor of a seventh defendant, Doggett Enterprises, Inc., the operator of the Sheraton Parking Garage. Smith does not appeal this order.

In its appeal, Washington Sheraton Corporation raises sufficiency of the evidence and, in the alternative, seeks a new trial on the basis of the "egregious conduct" of plaintiff's counsel. Brief for Appellant at 17. Smith cross-appeals from the judgment in favor of the five other defendants.

The governing legal principles are well known. Our review of district court decisions on motions for judgment as a matter of law is *de novo*. We consider all evidence in the light most favorable to the nonmoving party. *See Scott v. District of Columbia*, 101 F.3d 748, 752–53 (D.C.Cir.1996). We do not assess the weight of the evidence, only its sufficiency. The jury's verdict will stand unless "the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Id.* at 753. But the evidence must be "more than merely colorable"; it must be "significantly probative." *Siegel v. Mazda Motor Corp.*, 878 F.2d 435, 437 (D.C.Cir.1989).

■■■ Because this is a diversity case, the substantive tort law of the District of Columbia controls. *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C.Cir.1993). The standard of care owed by an owner or occupier of land is "reasonable care under all of the circumstances." *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C.1988). To recover against either an owner or occupier of land, the plaintiff must show "that the defendant had notice—either actual or constructive—of the present existence of an allegedly dangerous condition." *Croce v. Hall*, 657 A.2d 307, 311 (D.C.1995). While generally a landlord is not responsible for injuries caused by conditions developing after the lessee takes possession, a third party may recover against the lessor or landlord of a property leased for public purposes if the party demonstrates that the injury was caused by a "condition existing when the lessee took possession" and that the lessor "knew or should have known of the condition and realized or should have realized the unreasonable risk" involved. RESTATEMENT (SECOND) OF TORTS § 359 (1965); *see also Daly v. Toomey*, 212 F.Supp. 475, 478–79 (D.D.C.1963), *aff'd sub nom. Muldrow v. Daly*, 329 F.2d 886

(D.C.Cir.1964); *Hilleary v. Earle Restaurant, Inc.*, 109 F.Supp. 829 (D.D.C.1952). A party who operates the premises but is neither the owner nor the lessee may also have a duty of reasonable care. *See F.W. Woolworth Co. v. Stoddard*, 156 A.2d 229 (D.C. 1959).

I

■■ We will take up first Smith's claim that the district court erred in granting judgment for Sheraton Operating Corporation. Counsel for the six defendants told the court: "[W]e would move for judgment as a matter of law as to all six of the defendants that I am representing because there is a complete lack of evidence in the plaintiff's case as to which, if any, of these corporations own" the hotel. Trial Transcript at 967. Defense counsel then acknowledged that one witness had testified to working for the Sheraton Operating Corporation and so he assumed "for all the other five defendants, our motion should be granted." *Id.* at 1014. The court responded: "[T]he only possible defendant that the plaintiffs [*sic*] have brought to the attention of the jury may be the Washington Sheraton Corporation ... everyone other than Washington Sheraton Corporation is out of the case." *Id.* at 1079–80.

Given this exchange, the court must have meant to keep Sheraton Operating Corporation in the case and to grant judgment for the other five defendants, including Washington Sheraton Corporation. The only evidence of ownership or control brought to the jury's attention related to Sheraton Operating Corporation. A witness for the plaintiff had testified that he was the director of engineering at the Washington Sheraton Hotel and was employed by Sheraton Operating Corporation. He further testified that the engineering department was responsible for the maintenance of ramps leading from the garage to the hotel.

Because there was evidence of Sheraton Operating Corporation's control of the premises, it should not have been removed from the case for lack of such evidence. The court plainly intended for it to remain, although the order stated something quite different. We therefore reverse and remand for a new

trial against Sheraton Operating Corporation.

## II

We shall deal next with appellant Washington Sheraton Corporation. In the confusion caused by the similarity of the defendants' names, it alone wound up before the jury. On appeal, Washington Sheraton Corporation argues that the district court erred in submitting the case to the jury because Smith "failed to introduce evidence of who owned or controlled the ramp." Brief for Appellant at 7. Washington Sheraton Corporation points out, correctly, that the only defendant mentioned in trial testimony was Sheraton Operating Corporation. *Id.* at 5. In other words, because the evidence implicated only Sheraton Operating Corporation, the verdict against Washington Sheraton Corporation cannot stand.

█ We believe Washington Sheraton Corporation's post-trial motion for judgment as a matter of law should have been granted, but for a reason other than the one just mentioned. Smith's case failed not on the element of ownership or control—as we shall discuss in a moment—but on the element of knowledge. Smith presented no evidence that Washington Sheraton Corporation knew or should have known of the allegedly dangerous condition of the ramp. *See Croce,* 657 A.2d at 311. Judgment as a matter of law may be rendered if one party fails to present evidence on a material issue. *See Ferguson v. F.R. Winkler GMBH & Co.,* 79 F.3d 1221 (D.C.Cir.1996); *McFarlane v. Caterpillar, Inc.,* 974 F.2d 176 (D.C.Cir.1992).

█ Having concluded that the district court erred in denying Washington Sheraton Corporation's motion for judgment as a matter of law, we have three choices. We may enter judgment for that party, or we may order a new trial, or we may remand the case to the district court to determine whether a new trial is appropriate. *See Scott,* 101 F.3d at 760 (citing *Neely v. Martin K. Eby Constr.*

*Co.,* 386 U.S. 317, 329, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967)); *see also* FED. R. CIV. P. 50(d). For the reasons next discussed, we order a new trial.

### A. The Pretrial Order

█ Washington Sheraton Corporation defended at trial, and again on appeal, on the basis that there was a "total lack of proof" of its ownership or control of the hotel. Trial Transcript at 1003; *see also* Brief for Appellant at 9. But this ignores the pretrial order in the case, an order designed to "control the subsequent course of the action." FED. R. CIV. P. 16(e). Smith's pretrial statement described the defendants as "all either owners, operators, or parent corporations of the Washington Sheraton Hotel." The Sheraton defendants' pretrial statement stated that Sheraton Operating Corporation "operates the Sheraton Washington Hotel pursuant to a management agreement with Woodley Road Associates. Woodley Road Associates leases the Sheraton Washington Hotel from 2660 Woodley Road Joint Venture." The Joint Venture consists of John Hancock Mutual Life Insurance Company, Sumitomo Life Realty, and Washington Sheraton Corporation.[2] *See* Defendants' Answer to First Amended Complaint. Under the heading "Statement of Defenses," the Sheraton defendants listed four defenses which are so brief they may be set out in their entirety.

1. Plaintiff's claim is barred by her contributory negligence in failing to see and heed the clear warning sign on the door leading to the elevator lobby on the third floor of the Park Tower.

2. Plaintiff cannot show how the accident occurred because she has no recollection of how it actually happened and therefore she cannot prove proximate cause, which is an essential element of her claim.

3. There is no evidence of wanton or reckless conduct to support a claim of punitive damages.

This seems to be an error. In the Answer and in the Response to Interrogatories, the partners in the joint venture are listed as John Hancock, Sumitomo, and Washington Sheraton Corporation.

---

2. In the pretrial statement, counsel for the Sheraton defendants described the joint venture as being comprised of "Sumitomo Life Realty (N.Y.), Inc., John Hancock Mutual Life Insurance Company, and ITT Sheraton Corporation."

4. Plaintiff's damage claims are not supported by competent evidence.

After exchanging these pretrial statements, the parties appeared for a pretrial conference. On October 5, 1995, seven weeks before trial, a magistrate judge entered a final Rule 16(e) pretrial order. The order stated that the parties' pretrial statements were "incorporated herein" and that the defendants "are the owners, operators, and parent corporations of the hotel." At no point in these proceedings did the Sheraton defendants dispute their ownership or control of the hotel and its parking facility.

■■■ A Rule 16 pretrial order "conclusively establish[es] the issues of fact and law in the case," *United States v. Hougham,* 364 U.S. 310, 315, 81 S.Ct. 13, 17, 5 L.Ed.2d 8 (1960), thereby "lessening the opportunities for surprise" and "expediting the trial," *Rosden v. Leuthold,* 274 F.2d 747, 750 (D.C.Cir.1960). *See also Lankford v. Idaho,* 500 U.S. 110, 120, 111 S.Ct. 1723, 1729, 114 L.Ed.2d 173 (1991); 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1527 (2d ed.1990). Failure to comply with a pretrial order can give rise to sanctions. *See* Rule 16(f). While a pretrial order may be modified "to prevent manifest injustice," Rule 16(e), the defendants in this case never sought a modification. Smith was entitled to rely on the parties' pretrial statements and the pretrial order to inform her of "precisely what [was] in controversy." *Erff v. Mark-Hon Indus., Inc.,* 781 F.2d 613, 617 (7th Cir.1986); *see also Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324, 1329 (9th Cir.1987).

■■■ The plaintiff in a premises liability action must prove the defendant owned or controlled the property. But a defendant waives any objection on this score if the defendant fails to raise lack of ownership or control as a defense in the face of the plaintiff's pretrial statement clearly asserting the contrary. As the court said in *Morro v. City of Birmingham,* a "defendant can waive a potential defense by failing to ensure that the issue is clearly preserved in the pretrial order." 117 F.3d 508, 515 (11th Cir.1997). *See Correa v. Hospital San Francisco,* 69 F.3d 1184, 1195 (1st Cir.1995); FED. R. CIV. P. 16(c) advisory committee's note. Even a prima facie element of the plaintiff's case may be removed from dispute in this manner. *See Romero Reyes v. Marine Enter., Inc.,* 494 F.2d 866 (1st Cir.1974). Furthermore, Local Rule 209 requires a party's pretrial statement to contain a statement of defenses raised by that party, including "defenses raised by way of general denial, without regard to which party has the burden of persuasion." D.D.C.R. 209(b)(4).

The pretrial statements and the resulting order are consistent with other representations the Sheraton defendants made during the course of litigation. Responding to interrogatories, Sheraton Operating Corporation stated: "2660 Woodley Road Joint Venture is the owner of the Sheraton Washington Hotel." In their motion *in limine,* the defendants, referring to themselves as "collectively 'Sheraton,'" stated that "Sheraton as the owner of the premises satisfied its duty to plaintiff."

Thus the district court's grant of judgment in favor of five of the six defendants was erroneously predicated on the ground that Smith had failed to prove ownership or control when the pretrial order had relieved Smith from the burden of proving this.

### B. The Conduct of Defense Counsel

As we have described, defense counsel's motion for judgment on behalf of five of his clients included Washington Sheraton Corporation. Counsel explicitly acknowledged that there had been testimony concerning Sheraton Operating Corporation. He then stood silent as the court inadvertently granted judgment in favor of Sheraton Operating Corporation but kept Washington Sheraton Corporation in the case. Defense counsel no doubt viewed this development with glee. Every attorney likes to try a case with a net, to have a sure basis for reversal if the jury finds against his client. On the other hand, plaintiff's attorney also said nothing to correct the court's misstatement. Why he did not speak up is a mystery to us.

At any rate, there is a good reason not to reward the defense for the confusion that

ensued. Defense counsel represented to the district court that there was "a total vacuum as to who owns the Sheraton Operating Corporation, who owns the Sheraton Hotel, what partners are involved in it," *see* Trial Transcript at 1003. At oral argument in this court, defense counsel maintained that his Answer denied ownership and control[3] while it acknowledged the leasing arrangement of the hotel.[4] Clearly someone owned the hotel and the universe of all possible owners seems to have been the defendants. When we asked about this, defense counsel responded that he did not know who owned the hotel, that he never asked any of his Sheraton clients whether they did, that he never investigated the subject. In other words, on his interpretation of the pleading, he filed an answer denying his clients' ownership without knowing whether the denial had any evidentiary foundation. There is a rule against such practices. Federal Rule of Civil Procedure 11(b)(4) provides that in pleadings and other representations to the court, an attorney is certifying that "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

### C. The Defect in Proof May be Remediable

Our final reason for ordering a new trial rather than judgment for Washington Sheraton Corporation is that we believe Smith's failure of proof on the element of whether defendants knew or should have known about the ramp's condition may be remedied. In *Neely v. Martin K. Eby Construction Co.,*

the Supreme Court stated that when "the court of appeals sets aside the jury's verdict because the evidence was insufficient to send the case to the jury, it is not so clear that the litigation should be terminated." 386 U.S. at 327, 87 S.Ct. at 1079. In considering a post-verdict motion for judgment as a matter of law, a district court has discretion to order a new trial rather than grant judgment "if it believes that the defect in the nonmoving party's proof might be remedied on a second trial." 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2538, at 357 (2d ed.1994). An appellate court has no less discretion. *See id.* § 2540; *see also Network Publications, Inc. v. Ellis Graphics Corp.,* 959 F.2d 212 (11th Cir.1992). While not all cases involving insufficiency of evidence deserve a new trial, the matters we have already mentioned make a new trial the appropriate remedy here.

### III

With respect to cross-appellees John Hancock Mutual Life Insurance, Sumitomo Life Realty, and Woodley Road Associates, we also vacate the judgment in their favor and remand for a new trial. The court's judgment rested on the proposition that Smith had introduced no evidence of their ownership or control of the hotel. As we have discussed, that issue was conceded by the parties' pretrial statements and the pretrial order. Defendants' pretrial statement described John Hancock and Sumitomo as partners in 2660 Woodley Road Joint Venture,

---

3. Plaintiff's First Amended Complaint alleged:

   11. The defendant ITT Sheraton Corporation owns defendant Washington Sheraton Corporation and the Sheraton Operating Corporation.
   12. Defendant Washington Sheraton Corporation, defendant John Hancock Mutual Life Insurance Company, and defendant Sumitomo Life Realty are partners in an entity known as 2660 Woodley Road Joint Venture, through which they own the Sheraton Washington Hotel and the Sheraton Parking Garage.
   13. 2660 Woodley Joint Venture leases the Sheraton Washington Hotel to defendant Woodley Road Associates, Inc., which in a joint agreement with Sheraton Operating Corporation, operates the Sheraton Washington Hotel.

The Sheraton Defendants submitted two Answers, identical in the following paragraphs:
   11. Admitted.
   12. & 13. The Sheraton Washington Hotel is leased by Woodley Road Associates, Inc. and operated by Sheraton Operating Corporation. The leasee [*sic*] is a tenant under a lease from 2660 Woodley Road Joint Venture which is comprised of John Hancock Mutual Life Insurance Company, Sumitomo Life Realty, and Washington Sheraton Corporation. The remainder of the allegations are denied.

4. Of course, a negligence action may lie against a defendant who is the lessor rather than the owner of property. And an admission that one is the lessor of property is not a denial that one is also the owner of the property.

and stated that "Woodley Road Associates leases the Sheraton Washington Hotel from 2660 Woodley Road Joint Venture." Thus the reasons the court gave for its judgment do not support it. .

Smith's case did suffer a complete lack of evidence on the element that these defendants had notice of the allegedly defective condition of the ramp, but for reasons already mentioned we believe it appropriate to remand for a new trial. Had the district court been alerted to the absence of evidence of knowledge and decided to grant the defendants' Rule 50(a) motion on that ground, it would have had discretion instead to grant plaintiff a dismissal without prejudice. *See* 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533, at 318; *see also Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217, 67 S.Ct. 752, 755–56, 91 L.Ed. 849 (1947).

■■■■ The grant of judgment in favor of ITT Sheraton Corporation is another matter entirely. We affirm that judgment because, as a corporate owner of Washington Sheraton Corporation and Sheraton Operating Corporation, *see* Defendants' Answer ¶ 11, ITT Sheraton Corporation is not liable for harm caused by a condition on property belonging to its subsidiaries. As Smith conceded at oral argument, no attempt was made at trial to pierce the corporate veil. The law in the District of Columbia is that "the acts and obligations of the corporate entity will not be recognized as those of a particular person until the party seeking to disregard the corporate entity has proved by affirmative evidence that there is (1) unity of ownership and interest and (2) use of the corporate form to perpetrate fraud or wrong." *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C.1984); *see also Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 248 (D.C. 1993). Nor can ITT Sheraton Corporation be held liable as an owner of the property where the injury occurred. It is a fundamental principle of corporate law that "[t]he owner of the shares of stock in a company is not the owner of the corporation's property." *Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69, 81, 46 S.Ct. 256, 258, 70 L.Ed. 475 (1926). In *Office of People's Counsel v. Public Service Commission of the District of Columbia*, 520 A.2d 677 (D.C.1987), the Court of Appeals for the District of Columbia ruled that a holding company which owned all the stock in three parent corporations had no legal interest in the taxicabs which were the property of those corporations. The court there explained:

> Ownership of stock by one corporation in another does not create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other. Even complete ownership of all outstanding stock of a corporation is not the equivalent of ownership of a subsidiary's property or assets, because a parent and subsidiary comprise two wholly separate entities with individual property rights.

*Id.* at 681 (quoting 18A AM.JUR.2D *Corporations* § 751 (1985)). Thus ITT Sheraton Corporation, despite its ownership of the companies that leased and operated the hotel, did not own the hotel.

### IV

■■■ We reject the additional points of error raised by the parties. Only one of the points warrants discussion—the defense contention that Smith was contributorily negligent as a matter of law. The theory is that a sign posted on the door opening to the ramp—reading "Caution Watch Your Step" with arrows pointing down—sufficiently alerted Smith to the need to exercise a greater degree of care and that her failure to do so rendered her contributorily negligent as a matter of law. *See* Brief for Appellant at 13.

■■■ Contributory negligence is almost always a question of fact for the jury. *See Rich v. District of Columbia*, 410 A.2d 528, 532 (D.C.1979). "Only in exceptional cases, where the facts are undisputed and where but one reasonable inference can be drawn, is the trial court justified in holding that negligence or contributory negligence has been established as a matter of law." *Singer v. Doyle*, 236 A.2d 436, 437 (D.C.1967); *see also Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 90 (D.C.Cir.1987).

Washington Sheraton Corporation relies on *Poyner v. Loftus,* 694 A.2d 69 (D.C.1997), for the proposition that a person "must see what is reasonably there to be seen." Reply Brief of Appellant at 7. *Poyner* held that a legally blind plaintiff had failed to use reasonable care when he continued to walk along an elevated sidewalk while turning his head to the side. "At the critical moment, according to his own testimony, Poyner, who could see six to eight feet in front of him and was aware of his handicap, did not look where he was going." 694 A.2d at 71. *Poyner,* however, does not alter District of Columbia law; the Court of Appeals reiterated that "[o]nly in the exceptional case ̈ is evidence so clear and unambiguous that contributory negligence should be found as a matter of law." *Id.* (citing *Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986)).

The fact that a warning sign was posted on the door leading to the ramp does not mean that Smith's fall was the result of her failure to exercise ordinary care. Smith's counsel argued to the jury that the sign did not adequately direct a reasonable person's attention to anything on the far side of a closed door. *See* Trial Transcript at 1107. The cautionary words with downward pointing arrows could have led a reasonable person to believe that the danger was at the doorsill rather than beyond, or at least a reasonable jury could so conclude. Smith did not know, at the time she approached the door, that it opened onto a ramp. Even had she been aware of the ramp, "[k]nowledge alone of a condition is insufficient to charge [her] with contributory negligence as a matter of law." *Trust v. Washington Sheraton Corp.,* 252 A.2d 21, 22 (D.C.1969). In *Trust,* the Court of Appeals held that although the plaintiff had noted the existence of a step prior to her fall, the trial court erred in granting judgment n.o.v. to the defendant. *Id.* When there is evidence on which reasonable people might differ, *see District of Columbia v. Cooper,* 445 A.2d 652, 655 (D.C.1982), the issue of contributory negligence should be submitted to the jury. So here.

\*        \*        \*

The judgment as a matter of law in favor of ITT Sheraton Corporation is affirmed.

The verdict against Washington Sheraton Corporation is vacated. The judgments in favor of Sheraton Operating Corporation, John Hancock Mutual Life Insurance Company, Sumitomo Life Realty, and Woodley Road Associates are reversed. The case is remanded for a new trial against these five defendants.

*So ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, dissenting:

Except for one issue I find myself in full agreement with the majority. Unfortunately the issue—contributory negligence—is dispositive. If, as I believe, no reasonable jury could find the plaintiff free of contributory negligence, then all the other issues are moot. Accordingly I dissent.

The plaintiff, wife of a U.S. Senator, drove with friends to a lunch at the Shoreham Hotel in honor of the First Lady. Because the parking at the Shoreham was full, she left her friends off there, and went to park her car at the nearby Sheraton Washington. To exit from the parking structure to the hotel proper, she had to pass through the Exit door shown in Exhibit 1 to this opinion (a black-and-white photocopy of Defendant's Trial Exhibit # 26, a color photograph). On it, perhaps two inches below the door handle, appears a warning sign saying,

### CAUTION

### WATCH YOUR

### STEP

with five arrows pointing down.

On the hotel side of the door there is a ramp that appears roughly symmetrical to the one on the garage side. (Plaintiff's Motion for Partial Summary Judgment as to Liability as to Defendants ITT Sheraton, Sumitomo Life Realty, John Hancock Mutual Life Insurance Company, Sheraton Operating Corporation and Woodley Road Associates, Exhibit C.) A person going through the door directly (i.e., pursuing a course perpendicular to the plane of the doorway) would step onto the far ramp. Beyond the area directly aligned with the doorway, the

edge of the far ramp fell vertically to floor level, so that for anyone who stepped to the side while entering the hotel there was a drop of several inches—the record does not make clear how many—at least at the end of the ramp nearest the door frame. It was this configuration of the ramp, and/or the absence of a handrail, that the jury found negligent. Defendant does not dispute that it could reasonably do so.

Plaintiff described her fall as follows:

I ... opened the door ... with my left hand and my left shoulder and probably my left leg and foot as well, because it was a very heavy door, and pushed open the door and proceeded in with my right foot. My right foot fell off that right side of that ramp and I was catapulted into the metal framework of the [elevator].

Joint Appendix ("J.A.") 130. In a passage from her deposition read into evidence at trial, she said

I stepped through the doorway expecting there to be a ramp on the other side and my foot just went into—I can only describe it as an abyss.

*Id.* at 267. According to plaintiff's testimony, she was able to see the "Exit" sign by the door "easily," and the lighting on the hotel side of the door was "much brighter" even than that. Trial transcript at 1024, 1027.

I do not believe a reasonable jury could have found that someone leaving the parking garage through this exit could have suffered the accident that befell plaintiff if she exercised reasonable care in light of the prominent "Caution" sign. First, a person exercising reasonable care would *see* the sign, right next to the door handle and in very bold lettering.[1] (Plaintiff testified that she did not remember seeing it. J.A. 270.) Plaintiff's counsel evidently assumed the sign's

visibility, arguing instead to the jury that it failed to direct attention to any danger on the other side of the door. Trial transcript at 1107. But this depends on an odd construction of the sign. Counsel's idea evidently was that it directed the reader's attention *only* to hazards before the door, which she could see before she touched it, and perhaps to hazards directly beneath the door, but not at all to hazards just beyond the door. I cannot see how the sign means anything other than for the patron to proceed with caution *both* as she approaches *and* as she steps through the door. This includes the first steps she takes on the other side. Of course, under special circumstances a reasonable person might disregard the warning, say if she were pursued by a thug. But plaintiff suggested no such extreme circumstances.

In its recent decision in *Poyner v. Loftus*, 694 A.2d 69 (D.C.1997), D.C.'s Court of Appeals made clear that in its view proof of contributory negligence as a matter of law is not just a once-in-a-blue-moon event. In *Poyner*, the plaintiff, legally blind but able to see about six to eight feet in front of him, was on a walkway elevated four feet above the street level and lacking guardrails. Shrubs normally acted as a (modest) barrier to persons' falling off the walkway, but on the day in question one was missing, as Poyner noticed. Distracted by someone calling out his name, and failing to take the precautions indicated by the absence of the protective shrub, Poyner walked over the edge and suffered injuries. The court found his conduct contributorily negligent as a matter of law. In our case, similarly, plaintiff "failed either to look at all or to look observantly and see what should have been plainly visible." *Poyner*, 694 A.2d at 71 (quoting *Singer v. Doyle*, 236 A.2d 436, 438 (D.C. 1967)).

---

1. In the color photo contained in the Joint Appendix the sign gives off an iridescent glow, but trial testimony indicates that this may well have overstated the sign's salience. The black-and-white photocopy appears to cancel that overstatement.

The majority is, of course, correct that negligence and contributory negligence are only rarely established as a matter of law, see *Maj. Op.* at 786–87 (citing *Singer v. Doyle,* 236 A.2d 436, 437 (D.C.1967)), and that *Poyner* wrought no change in District of Columbia law, *id.* at 787. But *Poyner* dramatically illustrates the District's idea of reasonable care and its insistence on real, not rubber-stamp, superintendence of the jury. To be true to the District's substantive law, which controls our review of the district court's decision on the motion for a directed verdict, *Ferguson v. F.R. Winkler GMBH & Co. KG,* 79 F.3d 1221, 1224 (D.C.Cir.1996), we should reverse for failure to grant the motion.